Filed 9/28/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E068282 |
| v. | (Super.Ct.No. INF1202696) |
| EDGAR ESPINOZA, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Alfonso Fernandez (retired judge of the Santa Clara Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and Charles Everett Stafford, Jr., Judges. Reversed with directions.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

### A.     PROCEDURAL HISTORY

On October 29, 2012, a complaint charged defendant and appellant Edgar Espinoza with one count of possession of methamphetamine for sale under Health and Safety Code section 11378; on November 6, 2012, defendant pled guilty to the charge. The court suspended imposition of defendant's sentence and placed him on three years of formal probation with 220 days in local custody.

On May 3, 2013, defendant filed a motion to withdraw his guilty plea under Penal Code section 1018[1] claiming that he was not advised of the immigration consequences of his plea.  On October 17, 2013, both defendant and defense counsel, who had represented defendant at his plea negotiations, testified at the section 1018 motion.  The trial court denied the motion.

On July 8, 2014, defendant admitted a probation violation and was sentenced to 16 months in county jail.

On January 23, 2017, defendant filed a motion to withdraw his guilty plea under the newly-enacted section 1473.7.  In his motion, defendant represented that he had been "placed into removal proceedings."  In support of his motion, defendant included a notice to appear in removal proceedings.  On March 20, 2017, the trial court denied defendant's motion.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On May 5, 2017, defendant filed a timely notice of appeal.[2]

B.    FACTUAL HISTORY

The facts underlying defendant's conviction under section 11378 are not relevant to this appeal as the appeal challenges the trial court's denial of defendant's motion to withdraw his guilty plea on the grounds that he was not sufficiently advised of the immigration consequences of his plea.

## DISCUSSION

Defendant contends that the trial court abused its discretion in denying his motion to vacate his conviction and set aside his guilty plea under section 1473.7. The People contend that the trial court properly denied defendant's motion because: (1) section 1473.7 "does not retroactively apply" to defendant; and (2) defendant "was well aware of the immigration consequences of his guilty plea." For the reasons set forth below, we hold that section 1473.7 does apply in this case, and that the trial court erred in denying defendant's motion.

A.    LEGAL BACKGROUND

Section 1473.7 provides: "A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" for one of two reasons, including that "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging

---

[2] On February 7, 2018, defendant filed a motion requesting that we take judicial notice under California Rules of Court, Rule 8.252, Evidence Code section 452, subdivision (c), and Evidence code section 459, subdivision (a), of documents published by the legislative offices as part of the enactment of Penal Code sections 1016.3 and 1473.7. On February 8, 2018, we reserved the ruling on the request for consideration with the appeal. We hereby grant defendant's request for judicial notice.

the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) The motion must be made with "reasonable diligence" after the party receives notice of pending immigration proceedings or a removal order. (§ 1473.7, subd. (b).) The court must hold a hearing on the motion, and if the moving party establishes by a preponderance of the evidence that he or she is entitled to relief, the court must allow the person to withdraw his or her plea. (§ 1473.7, subd. (e).)

The People contend that section 1473.7 is not retroactive; thus, it cannot apply to defendant, who pled guilty and whose deportation proceedings started before section 1473.7 became effective. In a recent case, *People v. Perez* (2018) 19 Cal.App.5th 818 (*Perez*), the Fourth Appellate District, Division One, held that the language of 1473.7 "indicates that it can be applied retroactively if the moving party satisfies the requirements of the statute." (*Id.* at p. 827.) We agree with our colleagues.

In support of its argument, the People compare section 1473.7 with sections 1016.5, 1203.4a, and 1473.6. The People contend those sections indicate the Legislature understands how to explicitly state when a statue applies retroactively. Because section 1473.7 does not contain analogous language, the People maintain the Legislature did not intend it to apply retroactively. We disagree and do not find the specific language of sections 1016.5, 1203.4a, and 1473.6 helpful in our analysis here.

Section 1016.5, subdivision (c), specifically states that the statue is not retroactive: "With respect to pleas accepted prior to January 1, 1978, it is not the intent of the Legislature that a court's failure to provide the advisement required by subdivision (a) of Section 1016.5 should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid. Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea." Section 1203.4a, which requires a trial court to dismiss misdemeanor or infraction convictions in certain circumstances, specifically states that it applies to convictions occurring before and after the statute's effective date. (§ 1203.4a, subd. (d).) And, section 1473.6 allows a defendant to move to vacate a judgment based on newly discovered evidence of fraud, false testimony, or misconduct by a government official in connection with the underlying case. (§ 1473.6, subd. (a)(1), (2) & (3).) The statute includes a time limit by which a defendant can seek relief under the statute. (See § 1473.6, subd. (d). [within one year of the date the new evidence was or reasonably could have been discovered or the effective date of the statute, whichever is later].) "These statutes do not indicate that the Legislature uses a specific type of language when decreeing a statute is retroactive. Indeed, the statutes underscore the opposite conclusion. The Legislature uses no uniform language, but instead, offers clarification as it sees fit." (*Perez*, *supra*, 19 Cal.App.5th at p. 825.)

"Unlike section 1016.5, section 1473.7 does not contain an explicit subdivision stating the statute is not to be applied retroactively. (§ 1016.5, subd. (c).) That said, there is no specific indication in section 1473.7 that it is to be applied retroactively like subdivision (d) of section 1203.4a. Instead, section 1473.7 is somewhat like section 1473.6 in that both statutes contain a timeliness provision. (Compare § 1473.7, subds. (b)(1) & (2), (c) with 1473.6, subd. (d)(1) & (2).) Thus, on a plain reading of the statue, it appears a moving party can seek relief under it if he or she satisfies the statute's three requirements." (*Perez*, *supra*, 19 Cal.App.5th at pp. 826-827.)

The next step in the analysis is whether defendant satisfies the required elements to bring a motion under section 1473.7. There are three requirements: "First, the moving party can no longer be imprisoned or restrained. (§ 1473.7, subd. (a).)" (*Perez*, *supra*, 19 Cal.App.5th at p. 826.) "Second, the statute provides two reasons to challenge a conviction or sentence: (a) prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere' (§ 1473.7, subd. (a)(1)); or (b) newly discovered evidence of actual innocence (§ 1473.7, subd. (a)(2))." (*Ibid.*) Then, finally, the motion must be timely. (*Ibid.*)

Here, defendant has satisfied the first requirement—he is no longer in custody. Moreover, just three weeks after section 1473.7 became effective, on January 23, 2017, defendant filed a motion to set aside his plea under section 1473.7. Therefore, the motion is timely.

B.    ANALYSIS

The issue, therefore, is whether prejudicial error damaged defendant's ability to meaningfully understand or accept the actual or potential adverse immigration consequences of his guilty plea. Defendant contends that the trial court erred in denying his section 1473.7 motion to vacate his conviction because he made a sufficient showing that his trial counsel's performance was deficient and that he was prejudiced by the deficiency. We agree.

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7. [Citation.] To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the performance." *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75.)

In this case, on November 6, 2012, defendant pled guilty to one count of willful and unlawful possession of methamphetamine for sale under Health and Safety Code section 11378. Prior to entering his plea, defendant acknowledged to the court that he signed the plea form and that it had been fully explained to him. He was advised by the trial court and the *Tahl* form[3] that, as a non-citizen, "this conviction **may** have the

---

[3] *In re Tahl* (1969) 1 Cal.3d 122.

7

consequences of deportation, exclusion from admission to the U.S., or denial of naturalization pursuant to the laws of the United States." (Italics and boldface added.)

In his section 1473.7 motion, defendant argued that his trial counsel rendered ineffective assistance of counsel (IAC) because counsel failed to properly advise defendant of immigration consequences and failed to defend against immigration consequences.

At the hearing on March 20, 2017, defendant called his trial counsel, William Belden, as a witness. Belden could not specifically recall representing defendant or what advisements he discussed with defendant. However, his habit and custom was, at the very least, to go over the advisements in the *Tahl* form and give clients the opportunity to ask questions. In a substantial number of cases, he would simply cover the *Tahl* form, unless the client asked specific questions, which would lead to a more involved conversation. Belden could not recall whether there were involved conversations in this case. His notes did not reference any discussion of immigration consequences.

At the time Belden represented defendant, he considered a violation under Health and Safety Code section 11378 a serious crime that that would be deportable, but he was not aware that possession for sale was an "aggravated felony." His current understanding of immigration consequences of aggravated felonies is that "it's more of a quicker route to deportation, because certain rights are denied that might otherwise be available for the person who has that conviction."

During his testimony, Belden stated that he did not believe that he attempted to negotiate a plea with better immigration consequences. He could not specifically recall

8

the case, but "I likely did not, because my notes did not indicate there was any discussion on that." If there had been such a discussion, it would most likely have been in his notes. Moreover, he did not believe he consulted with an immigration attorney because he would have included that in his notes, too, if he had. Since he subsequently transferred to a juvenile department, Belden often inquires whether a client is a citizen, and also consults with immigration attorneys; he only recently started this practice.

Defendant testified that he has a green card and has lived in the United States since he was four years old. His siblings were born in the United States and are legal citizens. Defendant's recollection was that Belden went through the *Tahl* form with him. Defendant recalled Belden "just saying, you know, sign it here, initial here." Belden never discussed the fact that defendant could potentially plea to some other code section than Health and Safety Code section 11378. Defendant did not recall any discussion about a violation of Health and Safety Code section 11378 being an "aggravated felony." Defendant testified that he would not have signed the plea form had he known that Health and Safety Code section 11378 was an aggravated felony that required mandatory deportation. Defendant agreed to plea because "it's not that bad, you know, go ahead and do my time and get out." But, he would not have agreed to the plea deal had he known deportation was mandatory. Removal proceedings were currently pending.

At the hearing, defense counsel argued that Belden's performance was deficient in two ways. First, Beldan's bare advisement going through the *Tahl* form and stating that defendant could be deported was insufficient. Defendant pled guilty to an aggravated assault, which meant mandatory deportation. The evidence clearly showed Belden did

9

not explain that pleading guilty to violating Health and Safety Code section 11378 meant certain deportation unless defendant could prove that he would be tortured in his home country. Moreover, Beldan failed to attempt to negotiate for a plea to a crime with less severe immigration consequences. In arguing the motion, defense counsel stated that if defendant "doesn't get this conviction vacated, he's going to get deported. The immigration judge has told us as much. The only reason he's still here is because of the infamous backlog in the immigration courts."

The trial court denied defendant's motion. The court stated:

"What we're left with, then, is a form that advises you that you could be deported, which I would think that if you read that, and knowing your situation, you might say wait a second, let's talk some more about this. If you hadn't already.

"And then the judge again tells you you could be deported, couple times. And at one point the judge says even if you know this, do you still wish to proceed, and you said yes.

"I'm not sure there's any requirement in the law for the court to go any further than what they did in this case in admonishing you of the consequences of a plea. And because of that, I'm not satisfied that the defense has carried the burden."

From the evidence cited *ante*, it is clear trial counsel did not know that pleading guilty to Health and Safety Code section 11378, which constituted an aggravated felony, *would mandate* deportation of defendant. Moreover, although the trial court advised defendant that he *could* be deported, defendant was not informed that deportation would be *mandatory*. This is not a case where deportation was a possibility. This case

10

presented a situation where pleading guilty to Health and Safety Code section 11378 mandated deportation. Trial counsel should have been aware of or researched the actual immigration consequences of pleading guilty to Health and Safety Code section 11378, and advised defendant of the immigration consequences. Trial counsel, by simply going over the *Tahl* form and advising defendant that he *could* be deported, is objectively deficient performance under prevailing professional norms.

The next question is whether defendant was prejudiced by his trial counsel's deficient performance. "To establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.] '[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ' [Citation.] The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor. [Citation.] As the United States Supreme Court recently explained in *Lee v.* [*United States* (2017)] 137 S.Ct. 1958, it could be reasonably probable that a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial,' where 'avoiding deportation was *the* determinative factor for [the defendant].' [Citation.] "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he

11

would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 78.)

In his declaration, defendant stated that, "I now realize, after speaking with my current attorney, that there is no discretionary relief in immigration for a person like myself convicted of an aggravated felony. I was unaware of these severe consequences when I pled guilty to this offense, had I known of the immigration consequences I would not have pled guilty. Rather, I would have held out for a better deal or I would have taken my case to trial. I would never have pled guilty had I known that it would result in my deportation from this country." Because defendant resided in the United States since he was four years old as a lawful permanent residence, his family resided in the United States, and he was employed as a maintenance supervisor at a Holiday Inn, it could be reasonably probable that defendant would have rejected any plea that would have mandated deportation. (See *Lee v. United States* (2017) 137 S.Ct. 1958, 1967.) Based on this evidence, we find that defendant has established prejudice.

Therefore, the trial court erred in denying defendant's section 1473.7 motion to vacate his conviction. Defendant met his burden of establishing by a preponderance of the evidence (1) that trial counsel's performance was deficient in misadvising defendant about the immigration consequences of his guilty plea, and (2) that counsel's incorrect advice prejudiced defendant in that there is a reasonable probability that defendant would not have pled guilty if properly advised. Accordingly, we reverse the order and remand the matter to the trial court to allow defendant to withdraw his guilty plea.

12

## DISPOSITION

The order is reversed and the matter is remanded with directions to the trial court to allow defendant to withdraw his guilty plea.

CERTIFIED FOR PUBLICATION

MILLER _____

J.

We concur:

McKINSTER _____

Acting P. J.

CODRINGTON _____

J.