Filed 6/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B296742 |
| Plaintiff and Respondent, | (Super. Ct. No. KA010841) |
| | (Los Angeles County) |
| v. | |
| JOSEFINA RUIZ, | |
| Defendant and Appellant. | |

Assume a defendant wishes to plead guilty to a crime. She is an immigrant and is told: 1) her plea of guilty *may* make her ineligible to become a U.S. citizen; or 2) her plea of guilty *will* make her ineligible to become a U.S. citizen. Is there a significant distinction between the two advisements? Our Supreme Court and the Legislature think there is.

We, like all courts, must follow this view even when it involves the reversal of a plea of guilty that occurred three decades ago. We are mindful of the dissent's concerns, but the Supreme Court and the Legislature have spoken. The result here is required by law. (See *People v. Patterson* (2017) 2 Cal.5th 885,

889, 895; Pen. Code, § 1473.7.) [1] In section 1473.7, the Legislature broadened the standards to challenge guilty pleas involving advisements concerning immigration consequences.

Josefina Ruiz appeals an order denying her recent motion to vacate her 1991 conviction for possession for sale of cocaine base (Health & Saf. Code, § 11351.5) following her no contest plea. Ruiz's motion to vacate was filed pursuant to section 1473.7. She claimed her counsel did not advise her that a mandatory consequence of her plea would make her "*permanently ineligible to ever become a legal resident of the United States.*"

We conclude Ruiz may pursue her current motion to vacate the conviction. She had filed an earlier unsuccessful motion to vacate the conviction in 2017. But that prior motion did not bar the current motion because it was based on a different ground and on an earlier version of section 1473.7. We reverse and remand with instructions.

FACTS

In 1991, an informant told police that drug sales were occurring at Ruiz's home. After a search of her home, the police found 19 grams of cocaine and approximately $4,100 in a duffle bag in Ruiz's bedroom. Following her arrest, Ruiz entered into a negotiated plea agreement and pled no contest to possession for sale of cocaine base. She initialed an advisement in the written plea agreement stating, "I understand that if I am not a citizen of the United States, the conviction for the offense charged *may have* the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.)

---

[1] All statutory references are to the Penal Code unless otherwise stated.

On December 16, 2016, Ruiz filed a motion to vacate her conviction and set a hearing date for January 6, 2017 ("2017 motion"). The 2017 motion was entitled "Notice of Motion and Motion to Reopen Case and Vacate Conviction; Memorandum of Points and Authorities [Pursuant to Cal. Penal Code §[§] 1016.5 and 1473.7]." The 2017 motion argued that her "conviction should be vacated because the court did not ensure that [she] was adequately warned before pleading guilty to a conviction that *may result* in deportation." (Italics added.) The trial court denied the 2017 motion because the record showed that she was advised her conviction "*may have*" negative immigration consequences.

In 2019, Ruiz filed a "Notice of Motion and Motion to Vacate Conviction Pursuant to Section 1473.7." She claimed she "was not advised by her attorney that, because of her plea in this case, *she would be rendered permanently ineligible to ever become a legal resident of the United States.*" Ruiz claimed her attorney did not defend her against the "immigration consequences that she now faces," including removal proceedings. Her prior counsel brought a motion to vacate in 2017, pursuant to the general advisement standard of section 1016.5, which does not involve the mandatory immigration consequences she *now* faces for her controlled substance conviction.

The trial court denied the 2019 motion, ruling that it lacked jurisdiction to consider Ruiz's motion. It found the current motion was an untimely "motion for reconsideration" of the prior 2017 motion.

3

DISCUSSION

*Immigration Advisements*

Ruiz contends she did not receive an adequate advisement about the immigration consequences of her plea. We agree.

Under section 1016.5, subdivision (a), defendants must be advised: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged *may have the consequences* of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.)

The California Supreme Court has held, however, that the words "may have" in a section 1016.5 immigration advisement are not an adequate immigration advisement for defendants charged with serious controlled substance offenses. (*People v. Patterson*, *supra*, 2 Cal.5th at pp. 889, 895.) Defendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction. (*Ibid.*) "A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, and yet be unaware that a conviction for a specific charged offense will render the defendant subject to mandatory removal." (*Ibid.*)

In 1991, when Ruiz pled no contest to her offense, the plea form contained the following immigration advisement: "I understand that if I am not a citizen of the United States, the conviction for the offense charged *may have the consequences* of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.) This was not an adequate advisement

4

given the nature of her offense.  (*People v. Patterson*, *supra*, 2 Cal.5th at pp. 889, 895.)

In Ruiz's 2017 motion, Ruiz's counsel argued the 1991 conviction must be vacated because Ruiz was not advised that her conviction "*may result* in deportation."  But this motion should have been based on the ground that Ruiz was not advised that these immigration consequences were *mandatory*.  (*People v. Patterson*, *supra*, 2 Cal.5th at pp. 889, 895; *People v. Espinoza* (2018) 27 Cal.App.5th 908, 916-917.)

The trial court denied the 2017 motion, ruling that the advisement was valid because Ruiz was advised "the conviction for the offense charged *may have the consequences* of deportation."  The court erred because she was not advised that the immigration consequences were mandatory.  (*People v. Patterson*, *supra*, 2 Cal.5th at pp. 889, 895; *People v. Espinoza*, *supra*, 27 Cal.App.5th at pp. 916-917.)

In summary, Ruiz's 1991 advisement was not valid, her counsel moved to set aside the plea on the wrong ground, and the trial court erred in ruling she was properly advised.  (8 U.S.C. § 1227(a)(2)(B); *People v. Patterson*, *supra*, 2 Cal.5th at p. 895; *People v. Espinoza*, *supra*, 27 Cal.App.5th at pp. 916-917.)

*The Right to Bring a Motion in 2019 Under Section 1473.7*

Section 1473.7 was enacted in 2017.  It authorized a defendant to "prosecute a motion to vacate a conviction" that is "legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea."  (Former § 1473.7, subd. (a)(1).)

In 2018, the Legislature passed Assembly Bill No. 2867 to modify section 1473.7.  This new law, effective January 1, 2019,

5

made it easier to retroactively challenge convictions based on the ground that the defendant was not properly advised of the immigration consequences. Before the passage of Assembly Bill No. 2867, courts had ruled that defendants filing section 1473.7 motions and claiming their counsel erred on immigration advisements had to meet the standards required by *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 [80 L.Ed.2d 674, 693-694, 697-698] to set aside a conviction.

Thus, in 2017, when Ruiz's first motion was denied, defendants seeking to pursue section 1473.7 motions to vacate convictions based on counsel's immigration advisement errors were required: 1) to prove that "counsel's performance fell below an objective standard of reasonableness under prevailing norms," and 2) to also prove there is a "reasonable probability of a different outcome if counsel had rendered effective assistance." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) These were barriers to successful motions to vacate based on facially invalid immigration advisements.

The new law, effective in 2019, eliminated the *Strickland* requirements. (*People v. Camacho, supra*, 32 Cal.App.5th at pp. 1005-1006.) Now the trial court may set aside a conviction based on counsel's immigration advisement errors without a "finding of ineffective assistance of counsel." (*Id.* at p. 1006, italics omitted.) A defendant need only show that there were "one or more" errors that "were prejudicial and damaged [a defendant's] 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his or her] plea.'" (*Id.* at p. 1009.)

The 2019 amendment made another significant change. After 2017, a defendant could prevail only on judicially created

6

findings.  The "grounds for the motions" were not included in the statute.  (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 2867 (2017-2018 Reg. Sess.) June 12, 2018, p. 4.)  The 2019 amendment corrected this problem by eliminating these judicially created grounds.  The new statute provides that in ruling on a motion, "*the only finding that the court is required to make* is whether the conviction *is legally invalid due to prejudicial error* damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea . . . ."  (§ 1473.7, subd. (e)(4), italics added.)

Prior to the 2019 amendments, courts denied motions brought under section 1473.7 by imposing various time requirements.  The new amendments substantially enlarged the time periods in which to bring these motions.  (§ 1473.7, subd. (e)(1).)  Consequently, the 2019 version of section 1473.7 authorizes a substantially different motion than the 2017 version.

The California Legislature knew defendants, like Ruiz, had been misadvised on immigration consequences, yet they were losing section 1473.7 motions to vacate convictions in 2017 and 2018.  The Legislature passed Assembly Bill No. 2867 to "provide clarification to the courts regarding Section 1473.7" to "ensure uniformity throughout the state and efficiency in the statute's implementation."  (Assem. Bill No. 2867 (2017-2018 Reg. Sess.) ch. 825, § 1(b), p. 360.)  It intended to change the law to give defendants a *new right* to prevail using an easier new standard to retroactively challenge invalid prior convictions.  (*People v. Camacho*, *supra*, 32 Cal.App.5th at pp. 1007, 1009; *People v. Perez* (2018) 19 Cal.App.5th 818, 828.)

On January 9, 2019, Ruiz filed her motion based on the new law (§ 1473.7) and claimed there were one or more errors by counsel. She noted that 1) her original counsel erred by not advising her of the mandatory immigration consequences of her plea; and 2) counsel who filed her 2017 motion to vacate erred in basing the motion on the inapplicable general immigration advisement standard in section 1016.5.

### Collateral Estoppel

The trial court erred in ruling that Ruiz's 2019 motion, brought after the amendments to section 1473.7 were passed, was barred. It reasoned that she had lost a prior 2017 motion to vacate which contained a reference to the 2017 version of section 1473.7.

The People objected to Ruiz's 2019 motion because her prior 2017 motion contained two brief references to section 1473.7. Therefore, in 2019, Ruiz was not entitled to a "second bite at the apple."

Ruiz claimed the 2017 motion briefly cited, among other things, section 1473.7, but 1) her prior counsel ineffectively brought the 2017 motion on the ground that the 1991 advisement did not meet the requirements of the inapplicable section 1016.5 advisement provision; 2) "no motion was truly brought under Section 1473.7"; and 3) the "prior motion was denied pursuant only to Section 1016.5."

The trial court agreed with the People's position. It indicated that Ruiz should have filed a motion for reconsideration in 2017 and it lacked jurisdiction at this time to consider her motion.

But Ruiz could not file a motion under the newly enacted version of section 1473.7 in 2017. That new law, which facilitated

8

new challenges to convictions based on immigration advisement errors, was not operative until January 1, 2019. Moreover, Ruiz correctly noted that the 2017 motion based on the section 1016.5 advisement did not adequately notify her of the mandatory immigration consequences for her drug offenses.

Section 1473.7 was cited once in the caption and once in a brief string cite in an argument heading in that 2017 motion. But it was not the stated ground for that motion. (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1277 [a motion must state the grounds upon which it is based, and courts consider only those grounds].) Given Ruiz's offense, it was error for her prior counsel to base the motion to vacate on whether there was compliance with the section 1016.5 standard. "[T]he standard section 1016.5 advisement . . . 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering [mandatory immigration consequences].' " (*People v. Patterson, supra,* 2 Cal.5th at pp. 895-896.)

The People claim the citation to section 1473.7 in the 2017 motion is dispositive. But that was to the 2017 version of that statute, not to the 2019 version which may provide relief to Ruiz for her current motion. Moreover, at the hearing on the 2017 motion, the People's *only position* was that the trial court was properly relying on the plea form. But that form contained the *inadequate advisement* that Ruiz's conviction "*may have the consequences* of deportation, exclusion from admission to the United States, or denial of naturalization . . . ." (Italics added.)

The trial court agreed with the People's claim that allowing Ruiz to proceed with her current 2019 motion would give her a

9

*second bite of the apple* to challenge her counsel's mistake that occurred in 1991.

But this is a *different apple*. The new 2019 law provides a different standard for challenging and prevailing based on immigration advisement errors. Because it involves different issues than Ruiz's prior motion, Ruiz's current motion is not barred by collateral estoppel. (*Jackson v. City of Sacramento* (1981) 117 Cal.App.3d 596, 602-603 [collateral estoppel does not apply where the issues in the prior proceeding are not identical to the current issues]; *California Hospital Assn. v. Maxwell-Jolly* (2010) 188 Cal.App.4th 559, 572 [" 'It is . . . well established that when the proceeding in which issue preclusion is currently sought involves different substantive law than the previous proceeding, collateral estoppel does not apply' "]; *Powers v. Floersheim* (1967) 256 Cal.App.2d 223, 230 ["Collateral estoppel is not applicable to the decision of a mixed question of fact and law, *particularly if there has been an intervening change in the law*" (italics added)].) Nor is the collateral estoppel doctrine applied " ' "if injustice would result or if the public interest requires that relitigation not be foreclosed." ' " (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257.)

Moreover, as applied to criminal cases, "the policies underlying collateral estoppel are far outweighed by other policies which are vindicated by affording petitioner a trial de novo." (*Gutierrez v. Superior Court* (1994) 24 Cal.App.4th 153, 170.) The Legislature did not intend that motions brought under the new statutory standard would be denied because courts had denied earlier motions to vacate brought on different grounds. (See, e.g., *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 70, fn.

10

2, 80 [the court denied motions to vacate a 1989 conviction in 2009 and 2014 with a finding it had advised defendant about "possible immigration consequences," but defendant later prevailed on a section 1473.7 motion to vacate the 1989 conviction based on his counsel's ineffective assistance in not knowing the mandatory immigration consequences].)

The new 2019 law gives Ruiz an expanded right to show that 1) her first counsel erred in 1991; 2) her second counsel erred in the way he attempted to challenge the 1991 immigration advisement in the 2017 motion; and 3) as to both, she does not have to meet the ineffective assistance of counsel standard that was applicable earlier.

The changes the Legislature made in 2019 were intended to retroactively target convictions based on the type of inadequate immigration advisements that occurred in this case. The legislative declarations indicate the remedial goal of the new law: " 'The State of California has an interest in ensuring that a person prosecuted in state court does not suffer penalties or adverse consequences as a result of a legally invalid conviction.' " (*People v. Camacho, supra,* 32 Cal.App.5th at p. 1007.) Courts have the authority to provide relief for those subject to such convictions. (*People v. Glimps* (1979) 92 Cal.App.3d 315, 321 [the trial court "has full power to vacate a void order without an application on the part of anyone"].) Preventing Ruiz from having a hearing on the merits of her motion would undermine the new law's legislative intent and would condone a facially invalid advisement without providing a remedy for relief. "[A] statute should not be construed as creating a right without a remedy." (*Silberman v. Swoap* (1975) 50 Cal.App.3d 568, 571.) Section 1473.7, subdivision (d) provides that "[a]ll motions shall

11

be entitled to a hearing." Ruiz is entitled to a hearing on the merits.

## DISPOSITION

The order is reversed, and the matter is remanded to the trial court with instructions to hear and consider Ruiz's motion to vacate her prior conviction on its merits.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

I concur:

PERREN, J.

12

YEGAN, J., DISSENTING:

About thirty years ago, appellant entered into a negotiated disposition of her criminal case.  She avoided prison.  Now she seeks to vacate the conviction altogether because the federal government seeks to impose an adverse immigration consequence.  With the aid of a new statute (Pen. Code, § 1473.7) and new California Supreme Court precedent (*People v. Patterson* (2017) 2 Cal.5th 885, 896, 898) which relied on United States Supreme Court precedent (*Padilla v. Kentucky* (2010) 559 U. S. 356, 368), she may well be successful according to the majority opinion.  No California Supreme Court case says that *Patterson* is retroactive, but the rule articulated in *Padilla*, is not retroactive. (*Chaidez v. United States* (2013) 568 U.S. 342, 358.)  So, why should *Patterson* be retroactive?  I am ever faithful to the rule of *Auto Equity Sales, Inc. vs. Superior Court* (1962) 57 Cal.2d 450, 455, but *Patterson* does not resolve or even mention retroactivity. It declares a new procedural rule and I would not apply it retroactively.  I must dissent.

The Legislature and the Supreme Court have shown concern with the defendant's rights at the time of a guilty plea. But the People of the State of California have rights too.  These rights must be considered in the equation.  If appellant is successful in vacating her plea, how are the People going to prove a thirty-year-old narcotics case?  The present state of the law not only prejudices the People, it may allow an unfair result which has absolutely nothing to do with guilt or innocence.  This devalues the work of the superior court when it took and accepted the negotiated disposition.  If successful, and if the People cannot now prove the case, appellant has, in legal contemplation, never

been convicted and is not subject to immigration consequences. This will certainly be a surprise ending for this criminal action.

To be sure, at the time of the plea, the superior court advised appellant that the plea "may have the consequence of deportation . . . ." There was no admonition that she "will" be deported as is now apparently required. There is a good reason for the former advice: no one could have predicted then that the federal government would immediately and/or automatically deport her. Now the tail is wagging the dog and immigration consequences jeopardize an otherwise legally sufficient final judgment. Moreover, had the trial court advised appellant that she "will" be deported, that would have been erroneous. How can I so conclude? She was not then deported and apparently quietly lived in the United States for thirty years!

The rules regarding retroactivity of a newly announced rules of criminal procedures are well known and need not be repeated. (See, e.g., the scholarly opinion of Justice Bedsworth in *In re Ruedas* (2018) 23 Cal.App.5th 777, analyzing and applying the seminal case of *Teague v. Lane* (1989) 489 U.S. 288.)

The sanctity of a thirty-year-old superior court final judgment should not be sacrificed. There are rules curtailing collateral attack on criminal judgments. A defendant cannot sleep on asserted rights and he or she must timely assert them. (E.g., *In re Robbins* (1998) 18 Cal.4th 770, 778; *In re Clark* (1993) 5 Cal.4th 750, 759.) This rule should bar the relief here sought. The Legislature should not alter the timeliness rule. Now it is obvious why appellant is attacking the plea and I have some sympathy for her. She may well have been a model citizen after her 1991 crime. But there is another way to look at this. If she should have been deported in 1991, she has had the benefit of

2

living in the United States for thirty years. So in reality, there was no immediate or automatic deportation consequence of her plea and conviction.

Finally, if the majority is correct, there are undoubtedly many similarly situated defendants who will seek relief. There is an irony here which must be noted. The defendants with federal immigration problems may have their convictions "erased" and the defendants who are lawfully in the United States will remain convicted.

For the above reasons, I must respectfully dissent.

<u>CERTIFIED FOR PUBLICATION.</u>


YEGAN, J.

Steven D. Blades, Judge

Superior Court County of Los Angeles

_____

Gary Finn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.