Filed 2/20/26  P. v. Ramirez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMUEL FERNANDEZ RAMIREZ,<br><br>    Defendant and Appellant. | B344278<br><br>(Los Angeles County<br>Super. Ct. No. VA158749) |

        Appeal from an order of the Superior Court of Los Angeles County, Margaret Miller Bernal, Judge.  Affirmed.
        Patrick C. Obioha for Defendant and Appellant.
        Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Samuel Fernandez Ramirez appeals from an order denying his Penal Code section 1473.7[1] motion to vacate two felony convictions to which he pleaded no contest in exchange for a probationary sentence. Section 1473.7 "allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

Fernandez Ramirez contends that, due to his counsel's ineffective assistance, he did not understand the immigration consequences of his plea. We conclude, however, that the record belies Fernandez Ramirez's claim. We therefore affirm.

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**

We summarize only the facts and procedural history relevant to our resolution of this appeal.

**A.     The Charges, Plea, and Sentence**

In August 2021, police found Fernandez Ramirez in possession of approximately 25 pounds of methamphetamine. The district attorney charged Fernandez Ramirez with one count of possession for sale of a controlled substance (Health & Saf. Code, § 11378) and one count of transportation for sale of a controlled substance (*id.*, § 11379, subd. (a)). Fernandez Ramirez faced a possible sentence of seven years in prison. In addition, a conviction under Health and Safety Code section 11378 constitutes an

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

2

aggravated felony under federal immigration law (see *People v. Espinoza* (2018) 27 Cal.App.5th 908, 916) and renders the convicted defendant subject to mandatory removal from the United States (see *People v. Benitez-Torres* (2025) 112 Cal.App.5th 1252, 1262 (*Benitez-Torres*)).

In December 2023, Fernandez Ramirez—represented by Alejandro Benitez, a private defense attorney—pleaded no contest to both counts pursuant to a negotiated plea. In connection with the plea, Fernandez Ramirez received a felony advisement of rights, waiver, and plea form, commonly referred to as a *Tahl* waiver. (*In re Tahl* (1969) 1 Cal.3d 122.) The face of the *Tahl* waiver includes the following acknowledgement concerning the immigration consequences of the plea:

"I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty."

This typewritten acknowledgment is surrounded by handwritten brackets. In addition, handwritten underlining appears under the phrases "will result in" and "exclusion from admission or reentry to the United States." Fernandez Ramirez initialed the box printed immediately adjacent to the acknowledgement. He also provided his full signature at the conclusion of the *Tahl* waiver, below the following typewritten paragraph:

"Defendant's signature [¶] I have read and initialed each of the paragraphs above and discussed them with my attorney. My initials mean that I have read, understand and agree with what is stated in the paragraph. The nature of the charges and possible defenses to them, and the effect of any special allegations and enhancements have been explained to me. I understand each and

3

every one of the rights outlined above and I hereby waive and give up each of them in order to enter my plea to the above charges."

At the December 20, 2023 plea hearing, Fernandez Ramirez reaffirmed his understanding of the immigration consequences of his plea during the following colloquy with the prosecutor:

"[Prosecutor]: If you are not [a] citizen[ ] of the United States, pleading today will cause you to be deported, denied reentry into the United States, denied citizenship, naturalization, or amnesty in the future. [¶] Do you understand the immigration consequences of pleading today, . . . [¶] . . . [¶] . . . Mr. Fernandez Ramirez?

"[Fernandez Ramirez]: Yes, ma'am.

"[¶] . . . [¶]

"[Prosecutor]: Other than what I just stated in open court about your possible immigration consequences, has anyone told you anything different, . . . [¶] . . . [¶] . . . Mr. Fernandez Ramirez?

"[Fernandez Ramirez]: No, ma'am."

Fernandez Ramirez then entered a plea of no contest to both counts charged against him. In accordance with the plea agreement, the court sentenced Fernandez Ramirez to formal probation for a period of two years. As conditions of probation, the court further ordered that Fernandez Ramirez serve one day in county jail and perform 30 days of community labor.

### B. Proceedings on Fernandez Ramirez's Motion to Vacate His Convictions

Four months after the plea hearing, in May 2024, the Department of Homeland Security initiated removal proceedings against Fernandez Ramirez. He retained a different defense attorney, Patrick Obioha, who filed a motion to vacate Fernandez Ramirez's convictions pursuant to section 1473.7. In support of the motion, Fernandez Ramirez filed a declaration in which he attested,

4

in pertinent part, that (1) he "first came into the United States [from El Salvador] in 2010, when [he] was 9 years old[,] and accompanied [his] mother into the United States in search of a better life," (2) he did not "know that [he] was pleading to an aggravated felony," and his former counsel, Benitez, failed to explain that "if [he was] convicted of an aggravated felony, . . . [he could not] obtain bail from immigration," (3) Benitez failed to explain that "if [Fernandez Ramirez] took this plea that [he] would not be eligible for any [immigration] relief[ ]," and (4) Benitez "reassured [him] that this was a good plea that would not affect [him] as immigration would not come for [him]."**2**

On August 23, 2024, the judge who presided over Fernandez Ramirez's plea colloquy held an evidentiary hearing on the motion. Fernandez Ramirez did not personally appear at the hearing, as he remained in immigration custody. Obioha appeared on his behalf. The deputy district attorney who negotiated Fernandez Ramirez's plea represented the prosecution at the hearing. She opposed Fernandez Ramirez's motion, requesting that the court "take judicial notice of the written waiver that was filled out and signed and filed with the court at the time of the plea, as well as the plea transcript." In addition, the deputy district attorney presented live testimony from Benitez, who testified that he told Fernandez Ramirez the plea would result in deportation: "[I told him] that he will be deported. I also underlined that in the *Tahl* [waiver] that he signed on the date of the plea. The court—it should have been

---

**2** Fernandez Ramirez failed to include a copy of the declaration in our appellate record. For purposes of argument, however, we assume the summary of the declaration he includes in his appellant's brief is accurate.

5

in the court file, the *Tahl*, and it's underlined. I underlined 'will be deported.' "

On cross-examination, Benitez testified that he did not practice immigration law, did not research any immigration law in connection with Fernandez Ramirez's plea, and did not use the term "aggravated felony" when counseling Fernandez Ramirez. But Benitez further testified that "[t]here was no investigation to be done" because the prosecutor was not willing to offer an immigration-friendly plea:

"[Prosecutor]: Did you ask me, as prosecutor on the case, did you ask me for crimes that were not Health and Safety Code section 11378 or 11379 [violations]?

"[Benitez]: I did.

"[Prosecutor]: And what was my response?

"[Benitez]: No.

"[Prosecutor]: Did you ask me for an immigration-safe plea?

"[Benitez]: I did.

"[Prosecutor]: And what was my response?

"[Benitez]: No.

"[Prosecutor]: Did you ask [me] to put the case over specifically to allow Mr. Fernandez Ramirez to consult with an immigration attorney?

"[Benitez]: I did, and that was October 2023 before he took his plea December 2023. I also have that documented in my notes."

Obioha then requested that the court order Benitez to produce "[a]ny supporting documentation for the items that he testified to" and any communications between Benitez and Fernandez Ramirez. Benitez requested that the court review the discovery in camera to remove any privileged material before ordering disclosure. The court granted both requests and continued the hearing to September 11, 2024.

6

At the outset of the continued hearing, the court provided Obioha with the requested discovery.  The court, however, denied Obioha's request for a continuance to review the materials, explaining:  "If there is anything in that documentation . . . that you feel would change my opinion . . . then you're welcome to do a motion to have the court reopen the [section 1473.7] motion."

The court then permitted further cross and redirect examination of Benitez.  He testified, in pertinent part, that Fernandez Ramirez spoke to two immigration attorneys before accepting his plea:

"[On] October 29, 2023, when I was going to take [Fernandez Ramirez] his plea . . . [a]t that point, he had spoken with one immigration attorney.  As I was going over the plea again with him, and again, advising him to the consequences of the plea that would result in his deportation, denial of naturalization or exclusion from this country, I said, do you need more additional time to speak with another immigration attorney and he said, yes, and at that time, we then continued the plea to—not the plea but the pre-preliminary hearing, I believe, to December 15th, I want to say.  [¶]  I believe also it was either the day of his birthday or day before his birthday from what I recall, and he had also informed me that he had spoken with one other attorney, so he spoke with another attorney between October to December."

At the conclusion of Benitez's testimony, Obioha asked for a continuance to allow him to call an "expert . . . [¶] . . . [¶] . . . [i]n criminal defense and immigration" who was "not available" that day.  The court denied both the request for a continuance and the section 1473.7 motion in its entirety, explaining:

"The court has listened to the testimony, reviewed the transcript from the sentencing, as well as the *Tahl* waiver that was filled out by—initialed, signed by Mr. Fernandez Ramirez.

7

[¶] First of all, the court is going to deny the request to continue it. I do not feel that an expert in criminal defense and immigration is necessary for this case. I feel like the defendant in this case received adequate representation. He was told he was going to be deported multiple times. That is what is necessary for the court to determine whether he was advised of that and, indeed, he has been taken by [Immigration and Customs Enforcement]. The court is going to deny the motion."

Fernandez Ramirez appealed.[3]

## DISCUSSION

Fernandez Ramirez contends we must reverse the order because the record demonstrates that, due to the ineffective assistance of his former defense counsel, he did not understand the immigration consequences of his plea.[4] We are not persuaded.

We independently review the denial of a section 1473.7 motion (*People v. Vivar* (2021) 11 Cal.5th 510, 524–528 (*Vivar*)), but "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527–528.) A movant seeking relief under section 1473.7 bears the burden of establishing both "(1) he did not meaningfully understand

---

[3] Although Fernandez Ramirez failed to file a timely notice of appeal, we granted his request for leave to file a belated notice.

[4] In his appellant's brief, Fernandez Ramirez identifies the following additional "issue[ ] presented" (boldface, capitalization & underscoring omitted): "Did the trial court err in denying [Fernandez Ramirez's] request to call a criminal immigration attorney expert to testify to the standard required of a defense attorney for a non[-]citizen?" (Capitalization omitted.) But because Fernandez Ramirez offers no argument or legal authority on this issue, he has forfeited any claim of error on this point. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)

8

the immigration consequences of the guilty plea, and (2) he was prejudiced thereby (there is a reasonable chance he would have rejected the plea)." (*Benitez-Torres*, *supra*, 112 Cal.App.5th at p. 1255; *Espinoza*, *supra*, 14 Cal.5th at p. 319.)

"A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664; see also *Vivar*, *supra*, 11 Cal.5th at p. 530 ["we have long required the defendant corroborate such assertions with ' "objective evidence" ' "].) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) A movant need not demonstrate that his or her counsel rendered ineffective assistance, but such a showing may support section 1473.7 relief. (*Benitez-Torres*, *supra*, 112 Cal.App.5th at p. 1262; § 1473.7, subd. (a)(1).) At the " 'heart' " of the analysis " ' "is the mindset of the defendant and what he or she understood— or didn't understand—at the time the plea was taken." ' [Citation.]" (*Benitez-Torres*, *supra*, at p. 1262.)

In his appellant's brief,[5] Fernandez Ramirez argues the "declaration [he] submitted to the trial court conclusively proved the prejudice . . . required under [section] 1473.7." But he fails to address the first requirement for section 1473.7 relief—namely, that he did not meaningfully understand the immigration consequences of his plea. (*Benitez-Torres*, *supra*, 112 Cal.App.5th at p. 1255.) And objective evidence in the record supports that

---

[5] Fernandez Ramirez filed no reply brief on appeal.

9

Fernandez Ramirez understood that his plea would result in his deportation: His former defense counsel, Benitez, testified that he so advised Fernandez Ramirez, and that Fernandez Ramirez consulted with two immigration attorneys before accepting the plea. The trial court credited Benitez's testimony—which directly contradicts Fernandez Ramirez's declaration—and we must defer to the court's credibility determination. (See *Vivar*, *supra*, 11 Cal.5th at pp. 527–528.) In addition, Fernandez Ramirez placed his initials next to the acknowledgment in the written *Tahl* waiver that his plea would result in deportation—an acknowledgment that Benitez bracketed and underlined. Finally, Fernandez Ramirez confirmed orally during his plea colloquy that he "underst[ood] the immigration consequences of pleading," including that pleading would cause him "to be deported, denied reentry into the United States, denied citizenship, naturalization, or amnesty in the future." We therefore reject Fernandez Ramirez's contention that he made the requisite showing for section 1473.7 relief.

We likewise reject Fernandez Ramirez's related contention that we must vacate his convictions because Benitez provided ineffective assistance. Fernandez Ramirez faults Benitez for failing to research the immigration consequences of the plea and neglecting to use the term "aggravated felony" in rendering his advice. But Fernandez Ramirez fails to demonstrate any resulting prejudice. (See *In re Marquez* (1992) 1 Cal.4th 584, 602 ["[w]hen there has been no showing of prejudice, we need not determine whether trial counsel's performance was deficient"]; *Strickland v. Washington* (1984) 466 U.S. 668, 697 ["[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].) As set forth, *ante*, the trial court credited Benitez's testimony that he repeatedly advised Fernandez Ramirez—correctly—that the plea would lead to

10

deportation.  And with the exception of Fernandez Ramirez's declaration, all other objective evidence in the record corroborates Benitez's testimony.  The record thus does not support that Benitez's purportedly deficient performance caused Fernandez Ramirez to misunderstand the immigration consequences of his plea.

Accordingly, we affirm.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

WEINGART, J.

M. KIM, J.

11